IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| CARLUS F. HANNAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:12-CV-00119 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Carlus F. Hannah ("Hannah") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Hannah argues that the ALJ erred by failing to consider whether Hannah satisfied the requirements of Listing § 12.05(C) for intellectual disability, and that the ALJ improperly weighed opinion evidence.

This court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that the ALJ erred by failing to consider whether Hannah medically equaled the criteria of Listing § 12.05(C). Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16) and **GRANTING IN PART** Hannah's Motion for Summary Judgment

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

(Dkt. No. 10), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Hannah failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Hannah bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Hannah was born on April 16, 1983 (Administrative Record, hereinafter "R." at 111), and was considered a younger person on his alleged onset date. R. 31; 20 C.F.R. § 404.1563(c). Hannah completed schooling through 11th grade and attempted to get a GED, although there is conflicting evidence as to whether he successfully did so. R. 145, 443, 482. School records indicate that Hannah was enrolled in special education classes due to learning disabilities. R. 393. Hannah previously worked as an assembly worker, grocery bagger/stocker, cashier, dishwasher, janitor, and production worker. R. 141–42. These jobs were largely short term opportunities that Hannah described as "mostly non-tax-paying work." R. 443. Hannah did not

3

have any past relevant work during the alleged disability period. R. 31. Hannah reported that during the relevant period, he had the capacity to perform household chores, prepare meals, feed himself, go grocery shopping, and use public transportation. R. 159–62. Hannah was also capable of personal care, albeit with some difficulty. R. 159.

## Claim History

Hannah protectively filed for SSI on April 10, 2008, claiming that his disability began on September 1, 2006. R. 16. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 99–101, 105–107. On January 25, 2011, Hannah failed to attend a scheduled administrative hearing due to transportation issues. R. 468. A second hearing was convened on August 17, 2011 before Administrative Law Judge ("ALJ") Thomas W. Erwin to consider Hannah's disability claim. R. 16. Hannah again failed to appear before the ALJ, reporting that he needed to take care of his wheel-chair-bound wife. R. 480. The hearing went forward with Hannah represented by his attorney, and included testimony from psychological expert Gary T. Bennett, Ph.D. and vocational expert Annmarie E. Cash, L.P.C. R. 479.

On August 24, 2011, the ALJ entered his decision denying Hannah's claims. R. 32. The ALJ found that Hannah suffered from the severe impairments of right knee pain, obesity, diabetes mellitus, depression, anxiety, and borderline intellectual functioning. R. 18. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18. The ALJ further found that Hannah retained the residual functional capacity ("RFC") to perform a range of medium work, with the following additional limitations:

> [T]he claimant cannot drive; should avoid exposure to hazards; can never climb ladders, ropes, or scaffolds; can occasionally operate foot controls with the right

> lower extremity, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; is limited to simple, routine, repetitive, and unskilled tasks in a low-stress environment (defined as no more than occasional decision making or changes in the work setting); and can tolerate no interaction with the public and no more than occasional interaction with coworkers and supervisors.

R. 20.

The ALJ determined that Hannah has no past relevant work (R. 31), but that he could work at jobs that exist in significant numbers in the national economy, such as a dishwasher, janitor, or cleaner. R. 32. Thus, the ALJ concluded that he was not disabled. R. 32. On September 14, 2012, the Appeals Council denied Hannah's request for review (R. 5), and this appeal followed.

## ANALYSIS

Hannah contends that the ALJ failed to discuss whether he suffers from a mental disorder which qualifies as an "intellectual disability"[2] under Listing 12.05(C). The ALJ did not consider Listing 12.05(C) at all when finding that Hannah did not have an impairment or combination of impairments that met or medically equaled any listing. R. 18–20. I find this to be error that warrants remand.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v.

---

[2] Effective August 1, 2013, the Social Security Administration promulgated a final rule substituting the term "mental retardation" with "intellectual disability." See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013). The substance of the listing, including the criteria, remains unchanged.

5

Astrue, 3:09-CV-00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

Listing 12.05(C) for intellectual disability states the following:

**12.05** *Intellectual disability*: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

…

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05.

The structure of this listing is different than that of other mental disorder listings in that it contains "an introductory paragraph with the diagnostic description for intellectual disability" as well as four sets of criteria in Paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.00(A). Thus, Listing 12.05(C) presents a three-pronged proof requirement. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). First, Prong 1 requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period...." Next, Prong 2 requires a valid verbal, performance, or full scale IQ score of 60 through 70. Finally, Prong 3 requires that the claimant establish "a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id.

Prongs 1 & 2

As to Prongs 1 & 2, Hannah argues that in 1996, when he was 12 years old, a school psychologist determined that he had a performance IQ of 71. The medical record does not contain this IQ assessment. Rather, the IQ score is referencd in a report three years later from an assessment performed by the same school psychologist. R. 393. Although the score falls outside of the range of the IQ of Listing 12.05(C), Hannah argues that the ALJ must still analyze whether the record establishes that he medically equals the intellectual disability listing. I agree that the ALJ should have considered Listing 12.05(C) and the performance IQ score from 1996 in his step three analysis.

A claimant medically equals a listing if the claimant's impairment or combination of impairments "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). In reference to Listing 12.05(C), the Social Security Administration's Program Operations Manual System (POMS)[3] provides that:

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. *However, slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination*. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056(D)(1)(c) (emphasis added). "To determine that such a mental impairment does not meet but equals a listed impairment, it must first be shown that the capsule definition of that impairment is satisfied." POMS § DI 24515.056(B)(1). The capsule definition (or the essential features) of an intellectual disability listing under 12.05 requires that the claimant have a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports

---

[3] "The POMS guidelines represent the Commissioner's interpretation of the governing statutes and regulations, and so are entitled to some deference." Wilson v. Apfel, 81 F. Supp. 2d 649, 653 (W.D. Va. 2000).

onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05. Where, as here, the claimant cannot establish each of the components of the listing, he can still nevertheless show that the medical findings equal in severity to all of the criteria of the listed impairment. Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

Although the POMS guidelines suggest consideration of IQ scores between 70 and 75, this does not mean that the ALJ is required to consider whether the determined IQ score is accurate within a certain margin of error, as Hannah suggests. Pl.'s Br. Summ J. 14. To the contrary, the Fourth Circuit has rejected the Listing 12.05 IQ margin of error argument, chastising it as an assertion that "'close counts as horseshoes' as well as the Listings." Bennett v. Bowen, 884 F.2d 1387, at *4 (4th Cir. 1989) (unpublished); see also Burns v. Barnhart, 312 F.3d 113, 125 (3d Cir. 2002) ("We conclude that if we were to read an error range of five points into the regulation, it would violate the plain language of the regulation…."), Dover v. Apfel, 203 F.3d 834, at *2 (10th Cir. 2000) (unpublished) ("We note that all of the circuit courts that have considered similar 'margin of error' arguments with respect to Listing 12.05(C) have rejected it.") Dover v. Apfel, 203 F.3d 834 (10th Cir. 2000). However, an IQ score between 70 and 75 at face value does present the possibility of medical equivalency under the SSA's own interpretation of the listing. See POMS § DI 24515.056(D)(1)(c).

The evidence in this case shows that Hannah's IQ was tested in February 1999 when he was 15 years old and in the 9th grade. Ronald Rubenezer, Ed.D., assessed Hannah at that time, including evaluating his IQ, to determine the appropriate educational program for him. Dr. Rubenzer administered the Wechsler Intelligence Scale for Children – Third Edition ("WISC-III") and determined that Hannah had a full scale IQ score of 87, verbal scale IQ score of 95, and performance scale IQ score of 81. R. 393–95. Dr. Rubenzer reported in his written evaluation

8

that he had assessed Hannah's IQ three years earlier on January 24, 1996. R. 393. At that time, Dr. Rubenzer determined that Hannah had a WISC-III full scale IQ score of 80, verbal IQ score of 92, and performance IQ score of 71. R. 393. It is this performance IQ score of 71 that Hannah relies upon to assert that he medically equals Listing 12.05(C). The record does not contain any detailed description of the 1996 evaluation beyond the brief summary in the 1999 records.

More recently, on October 9, 2008, Kevin Alley, M.S. of New River Valley Services estimated that Hannah's IQ "is probably borderline if not below 72." R. 340. At a subsequent visit on November 6, 2008, Alley further estimated that Hannah's IQ was "below the average and probably around 80." R. 342. It is unclear whether these estimates were the product of any formal testing.

The ALJ did not mention the intellectual disability listing or any IQ score at step three. R. 18–20. When formulating Hannah's RFC, the ALJ noted only Hannah's full-scale IQ score of 80 from the 1999 examination, as well as the estimates from Hannah's 2009 therapy sessions. R. 24–25. Notably, the ALJ does not reference the 1996 performance IQ score of 71 anywhere in his opinion.

The regulations state that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(D)(6)(c). The lowest IQ score in the record is Hannah's 1996 performance IQ score of 71, produced in a Wechsler series assessment. The score was assessed at age 12, well within the developmental period suggested by Prong 1 in Listing 12.05(C). There is no question that Hannah did not meet the established criteria under 12.05(C) because he did not have an IQ score between 60 and 70. Nevertheless, under the POMS guidance as to Listing 12.05(C) and

9

the other relevant regulations, the performance IQ score of 71 at age 12 should have prompted the ALJ to analyze whether the medical evidence of record showed that Hannah medically equaled the listing criteria under 12.05(C). This is especially so in light of the fact that the most recent full scale IQ score estimates place Hannah in the borderline range of intellectual functioning, lending some credence to the 1996 assessment and tending to establish continued deficits in adaptive functioning during the relevant period.

In Johnson v. Barnhart, CIV.A.7:04 CV 00203, 2004 WL 2075452 (W.D. Va. Sept. 15, 2004), the claimant had a 9th grade education, attended special education classes, and based on two separate psychological evaluations, had IQ scores ranging from the 60s to mid 70s. The claimant in Johnson "suffer[ed] from strictly nonexertional impairments." Id. at *2. The "difficulty" in the case was that, because of the timing of the submission of evidence, no medical evaluator or examiner was asked to consider school records and psychological evaluation in combination, "so as to properly assess the issue of medical equivalence." Id. The court found that "the issue of medical equivalence...[had] not been adequately explored" and remanded the case for "further consideration as to whether the plaintiff's intellectual deficiencies and personality disorder are such as to meet or equal a listed impairment…." Id. at *2–3.

In the present case, Hannah's school records were submitted on November 1, 2010. R. 392. This was prior to the evaluation of state agency psychologist Louis A. Perrot, Ph.D., who found that Hannah's mental impairments were not severe (R. 306) as well as the assessment of state agency psychologist Julie Jennings, Ph.D., who did not find that Hannah met or equaled the criteria of Listing 12.05. R. 367. The school records were submitted before the consultative examination report of Pamela Tessnear, Ph.D. in January 2011. R. 441–50. However, it appears that although Hannah reported to Dr. Tessnear about his educational history, Dr. Tessnear did

10

not rely on any of Hannah's school records containing his IQ scores. R. 441–50. Dr. Gary Bennett, the non-examining psychological expert at the second administrative hearing, discussed Hannah's full scale IQ scores in the school records without mention of the lowest performance IQ score as directed by the regulations. R. 482–85. Therefore, not only has the ALJ failed to probe whether Hannah met or medically equaled Listing 12.05(C), it is unclear whether the medical experts had the opportunity to appropriately evaluate that question.

In Alderman v. Chater, 40 F. Supp. 2d 367 (N.D. W.Va. 1998), the court recognized that "the I.Q. requirements of Section 12.05(C) should be used as a *general* indication of mental functioning." Id. at 371 (emphasis added). The claimant in Alderman had a verbal IQ of 72, performance IQ of 82, and full scale IQ of 76, which placed the claimant in the borderline range of functioning. Id. at 369. The court discarded the Commissioner's argument that the score range in Listing 12.05(C) should be read literally, thus automatically disqualifying the claimant from the listing because no score fell within the range of 60 to 70. Id. at 371. The court found that, because the record showed severe impairments of severe myoclonus, chronic low back pain, and depression, the combined effect of these impairments with his borderline intellectual functioning rendered him disabled under Listing 12.05(C). Id. at 370–72. I find the circumstances in this case comparable, although I do not go so far as to find Hannah disabled under Listing 12.05(C) at this stage. I instead find remand proper to consider whether the 71 performance IQ at age 12 is valid and credible, and whether there is medical evidence to determine whether Hannah medically equals the criteria of Listing 12.05(C).

Determining the credibility and validity of IQ scores, and resolving conflicts between differing IQ scores, is quintessentially the duty of the ALJ. Hancock, 667 F.3d at 474 (noting that ALJs are permitted to "weigh conflicting IQ test results" and finding that "certain circumstances

11

permit an ALJ to discredit an IQ score"); see also Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). The record does not contain supporting documentation or detail from the 1996 IQ assessment by Dr. Rubenzer, and this may affect how the scores are analyzed in conjunction with Listing 12.05(C). However, this determination is the province of the ALJ, and not this Court on appeal. On remand, the ALJ is directed to seek further documentation of the 1996 school psychologist's report, to the extent possible.

Prong 3

As to Prong 3, the Fourth Circuit has noted that the regulations do not explicitly define a "significant work-related limitation" but such impairment does not have to be disabling in itself. Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir. 1985); see also Rice v. Astrue, CIV.A. 6:07CV016, 2008 WL 2233967, at *5 (W.D. Va. May 30, 2008). Indeed, "[i]f the plaintiff's physical [or other mental] impairment were required to be independently disabling, section 12.05(C) would be rendered meaningless." Branham, 775 F.2d at 1273. The Fourth Circuit has also held that "an illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal." Rice, 2008 WL 2233967, at *5 (citing Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir.1987)).

The introductory paragraph to § 12.00 equates the term "significant work-related limitation" for purposes of Listing 12.05(C) to the definition of severe impairment used at step two of the Commissioner's analysis:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

12

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.00. This further cements that an "additional and significant work-related limitation of function" is simply an additional severe impairment, defined as an impairment that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).[4] See Moon v. Astrue, 6:08CV-40016, 2009 WL 430434, at *4 (W.D. Va. Feb. 20, 2009) (noting that this element of 12.05(C) "closely parallels a finding of a severe impairment").

In this case, the ALJ found that Hannah suffered from multiple severe physical and mental impairments, as defined by 20 C.F.R. § 416.920(c), in addition to his borderline intellectual functioning. These include right knee pain, obesity, diabetes mellitus, depression, and anxiety. R. 18. The ALJ explicitly found that "these impairments cause more than minimal work-related limitations and are thus 'severe' as that term is defined in the Regulations." R. 18. As Listing § 12.00 adopts the definitions in 20 C.F.R. § 416.920(c), this finding necessarily means that the evidence of record met the requirements of Prong 3 of Listing 12.05(C), i.e. "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05(C); see Jackson v. Astrue, 467 F. App'x 214, 217 (4th Cir. 2012) (finding that where ALJ found severe impairments at step two, along with other diagnosed conditions, claimant had satisfied the "impairment imposing an additional and significant work-related limitation of function" prong); Alderman, 40 F. Supp. 2d at 371 (finding that because the evidence established other severe physical and mental impairments, this

---

[4] The Fourth Circuit has found that a claimant has a significant work-related limitation if he or she cannot perform his past relevant work. Flowers v. U.S. Dep't of Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990) (citing Branham, 775 F.2d at 1273). However, this alternative proxy rule for meeting Prong 3 is unavailable in the present case because the ALJ found that Hannah did not have any relevant past work. R. 31.

satisfied the requirement of an "impairment imposing an additional and significant work-related limitation of function").

Here, the ALJ recognized both additional physical and mental impairments by crafting a severely restricted RFC. In addition to moderate physical limitations, the RFC provided for only "simple, routine, repetitive, and unskilled tasks in a low-stress environment…and…no interaction with the public and no more than occasional interaction with coworkers and supervisors." R. 20. The ALJ found numerous severe physical and mental impairments, a finding that is supported by evidence in the record. In light of Hannah's developmental period IQ score of 71 and the evidence establishing impairments with additional and significant work-related limitation of function, I find this to be a circumstance where medical equivalency to Listing 12.05(C) should have been considered. The Supreme Court directs in <u>Sullivan v. Zebley</u>, that "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." 493 U.S. at 531.

## Opinion Evidence

Because I recommend remand based on Listing 12.05, it is not necessary to address Hannah's additional argument that the ALJ erred in weighing the opinion evidence. Upon remand, however, the ALJ should consider the entire record, including the additional evidence submitted to the Appeals Council, in evaluating the medical opinions in the record.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the defendant's motion for summary judgment be **DENIED**, Hannah's motion for summary judgment be **GRANTED IN**

14

**PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions to provide a fulsome analysis of Hannah's IQ scores as well as fully consider the evidence of Hannah's deficits in adaptive functioning.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 11, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge